Next case please. 3-11-0-8-6-5. Michael Marconi, Adolph, Emily, Theodore Jarre, v. City of Joliet, Alan Jeffrey Plyman Alright, Mr. Plyman May it please the court, this fine afternoon, Jeff Plyman, Corporation Counsel for the City of Joliet and it's certainly an honor to represent the people of Joliet before this honorable court and in this beautiful building. The city is here today to seek relief from this court. We are asking that Judge Patrick Garrell's final judgment order that resolved this case be reversed. And we think we have adequate legal grounds as explained in our memoranda to justify that request of this court. If I can provide just a quick contextual background on the case. In 2010, the City of Joliet, the Mayor and City Council made certain changes to a group health insurance plan, a self-insured group health insurance plan that covers all active employees and all retirees of the City of Joliet. And essentially what those plan changes included was the introduction for the first time of a new $250 annual deductible. That plan change was applied to all active and all retired employees. Also, there was an increase in the prescription drug co-payment of $3-5 depending on the type of drug involved, essentially. And again, that change was applied to all active employees on the plan and their families and all retirees as well. One other plan change which is mentioned in the briefs is that the City also required all active employees to now pay for the first time an annual premium of $1,300. That change was applied to the active employees of the City of Joliet, but it was not applied to the retirees. So the plan changes implemented by the City in 2010 actually were beneficial or were preferential relative between the active and retired employees. For individual retirees, Mr. Marconi is the lead plaintiff, filed suit in Will County Circuit Court. The sole theory of recovery that was presented in the pleadings and that was argued before the Circuit Court is a constitutional claim. The only claim asserted by the plaintiffs and that's pending before this Court today is whether or not those plan changes that were implemented by the City of Joliet violated Article 13, Section 5 of the Illinois Constitution, which I call in my brief the Pension Protection Clause. It's called a few different things in the cases, but I'll refer to it today as either 13-5 or the Pension Protection Clause. Judge Petra Garrow, after hearing cross motions for summary judgment, entered a series of rulings. Her first ruling was that health insurance was a benefit that was covered by Article 13, Section 5. Her second ruling was that the 2010 plan changes diminished or impaired the plaintiff's rights under Article 13, 5. And then she entered a final judgment order that essentially awarded damages, told the City of Joliet not to impose the changes as to these particular plaintiffs. And we then filed our Notice of Appeal. So this is a constitutional case. I would say that some elements of the case today involve issues of first impression in Illinois, certainly in the 3rd District, but not completely. There have been 11 cases that have been decided by the Illinois Supreme Court involving the Pension Protection Clause. And there is guidance that I think is beneficial to this Court today in resolving the plaintiff's claim and our request that Judge Petra Garrow's order be reversed. The first basis for our contention that the Court committed reversible error is that Article 13, 5 simply does not cover health insurance. It was intended to be and operates as a pension benefit protection clause, but it was never envisioned and has never been applied to cover other employment benefits, such as health insurance. And our starting point in the brief is the express language of the Pension Protection Clause. And the only employment benefit mentioned in that clause is a pension benefit. There's no reference whatsoever to health insurance. So the expressed language of 13, 5 gives no suggestion or no support for the concept that it would cover other employment benefits other than benefits that spring from membership in a pension plan or a retirement system. And how do you define membership benefits or a membership plan? That's a great question, and I believe it's been answered several times by the Illinois Supreme Court. The scope of protection, the zone of protection of Article 13, Section 5 are the pension benefits that are in the pension code at the time an employee enters a pension system. It does not cover vacation benefits as suggested by the plaintiff or other severance benefits as suggested by the plaintiffs. It does not cover health insurance as found by the trial court. The courts, the Illinois Supreme Court decisions have been very clear what the zone of protection is. The contract that's to be enforced under Article 13, 5 consists of the provisions of the pension code. Oh, it does. That's it. I believe so. I believe that's what the courts have said. I would point the court's attention to several Illinois Supreme Court cases that have considered the scope of Article 13, Section 5. The first case that really dealt with the pension code aspect of being a limitation on the zone of protection, I believe, is the Bedell decision that I cite in my brief. It's a case that involved a professor at Southern Illinois University, and when Plaintiff Bedell, Professor Bedell, was hired by SIU, there was a pension code provision in effect that provided for a right for an employee to purchase military service credits. And that right, that provision in the code, was amended after Professor Bedell began service at SIU. And the amendment actually provided for a period in which persons who claimed a right to purchase the credits could actually exercise that right, but then the statute provided for a cutoff, and that cutoff for the right to purchase military service credits applied to all members of the plan. It was not your typical two-tier system where members hired after a certain date would be cut off, but members hired prior to that date would retain their right. And the Illinois Supreme Court, when they decided the Bedell decision, had to deal with its principal prior precedent, which was the Peters v. Springfield case, the 1974 case. And Bedell, the Bedell court said, well, wait a minute, unlike in Peters, where the city of Springfield instituted a civil service system with a mandatory retirement age, here we're talking about a plaintiff that is asserting a specific provision of the Illinois pension code. And I believe if you read the Bedell decision, it doesn't take long to see that that was the difference between finding for the plaintiffs in Bedell and not finding for the plaintiffs in the city of Springfield case. And that was the first time that the court kind of put a limit on Article 13.5 and tried to define the contours, the outer limits of the type of benefits that 13.5 would apply to. In Springfield, which was a 74 decision, you had plaintiffs asserting a claim that their ultimate pension benefit, the amount of money they would get from their pension system, was going to be reduced by a municipal ordinance that forced firefighters and police officers to retire before they would maximize their pension benefits. And as I stated in my brief, I can think of nothing more institutional, more systemic than a civil service system, and certainly one that has a mandatory retirement age. If any court was going to find that some other municipal operation or program was a retirement system within the meaning of Article 13.5, it was going to find that a civil service system with a mandatory retirement date qualified as a retirement system within the meaning of Article 13.5. But the Peters court did not go there. They decided a case against the plaintiffs on the theory that indirect effects on pensions, even if they involve the monetary or economic value of those benefits, are permitted. And that's because the power exercised by Springfield in that case did not involve the exercise or direct conflict with a pension code provision. So to answer your question, Your Honor, I believe Bedell is the first signal from the Illinois Supreme Court that in analyzing 13.5 claims, the first question is, are we dealing with a pension benefit that arises under the pension code? And I think that's a threshold question. In this case, we certainly are not. This is a health insurance benefit. It does not come from membership in a pension plan. It's a benefit that arises out of employment with the city of Joliet. It's extended to active employees. It's extended to retired employees. Bedell is not the only case, though, that limited 13.5 to pension code benefits. But doesn't your argument lose a little steam because of the legislature's choice to not specifically exempt these benefits? I mean, don't they answer the question by saying if you are a municipality over $500,000, health insurance doesn't consider pension or retirement, but if you are in a municipality under $500,000, they don't say it. That's another great question, and it was one distinction that was specifically discussed by the court in its orders. And it was in a different context, though. To answer the question of whether or not the pension code defines the benefits, that's what I was addressing. Here what the trial court said is that even though 13.5 began its life as a pension protection provision, the Illinois legislature could and did insert other types of benefits within its scope of coverage. And the trial court looked to three reasons to support that conclusion. And I want to say that the Supreme Court has rejected that theory as well. I don't want to forget to say that that was the 98 case of Sklodowsky where plaintiffs tried a similar argument stating that pension funding formulas were specifically enfolded by the General Assembly into the pension code. Therefore, that provision became contractually enforceable under Article 13.5. And the Supreme Court in Sklodowsky said, no way. You don't have enfoldment of pension funding formulas into the scope of protection by 13.5 just because it's found within the pension code. Not only does a plaintiff have to get past the threshold issue of identifying a benefit created by the pension code, you then have to get into the exact analysis of whether or not you're dealing with an economic pension benefit or some other issue within the pension code, such as a pension formula or a funding formula. And Sklodowsky, and this is the third time that the Illinois Supreme Court dealt with funding formula questions. And the Sklodowsky court was very clear and said pension funding was beyond the protection of 13.5 even though it originates in the pension code. What the plaintiffs sought to do in Sklodowsky, which what the plaintiffs were trying to do in this case as the circuit court tried to establish, they tried to state that the funding formula in Sklodowsky became a matter of contractual right just because it's in the pension code. And the court said, no, a law is not a contract. And the legislature can choose to enter into a contract, but the legislature has to be very clear that that is its intention to do so. And it's the plaintiff's responsibility to establish that the legislature intended to treat this law as a matter of contract. And Sklodowsky said there was no evidence, there were no pleadings to that effect and rejected that attempt at enfoldment. Now here in this case, there is no pleading or evidence that the provisions cited by the circuit court were intended by the General Assembly to take those matters and constitutionalize them. And here's what the court looked at, and this is extremely important in my opinion and perhaps the heart of the case. Because certainly 13.5 came into this world as a pension protection plan. And now the circuit court is attempting to expand that to include non-pension benefits, including health insurance. And the way the circuit court tried to do that is to state that, first, that a premium deduction provision in the pension code, which allowed a downstate fire and police pension plan, which is the under 500,000 population reference that Your Honor made, that a premium deduction provision, a payroll deduction procedure, would somehow constitutionalize an entire health plan under Article 13.5. And to me, that intention is not clear. The fact that there is an administrative convenience to a plan and to a retiree that part of their pension check can be deducted and then sent to the group plan administrator, how does that evidence intent of the General Assembly to constitutionalize health insurance and to take all municipal health insurance plans and make them part of Article 13.5? That was plaintiff's burden to show. It wasn't pled. It wasn't established. The court argued that that was evidence of enfoldment. I think it just goes too far. It's not a reasonable conclusion. The other provision, and this one I think is absolutely critical, which is the continuance privilege. There's a statute that protects these retirees, and I think this is the answer to the question in this case. The insurance code, not the pension code, but the insurance code states that a retiree can participate in a municipal plan after they leave, but they have to do so on the same terms as the active employees, okay? The court looked at that statute and said, aha, the General Assembly provided continuance privilege, so all health insurance plans are now subject to Article 13.5. But when you look at the continuance privilege section of the insurance code, it expressly states that the retirees are to pay the same premium as that charged to the active employees from time to time. The statute anticipates flotation or changes, modifications, and increases in a premium payment. So to the extent that the circuit court says health insurance benefits have been enfolded into Article 13.5, I would say only to the extent, if that's true at all, which we disagree with, perhaps the premium deduction provision has been enfolded. Perhaps the continuance privilege has been enfolded, but not the entire health insurance plan. It would be a non-separator for this court to conclude that a statute which allows a city to increase premiums charged to retirees so long as they also charge active employees the higher premium would somehow prevent Joliet from increasing its health insurance costs at all. The statutory right allows for changes in the cost charged to retirees. That's what Joliet did here. In fact, we grant the retirees preferred status. I thank you very much for your time. Thank you, Mr. Bliner. And Mr. Jars. Thank you, Judge. Mr. Bliner, may I please this honor report on this very warm afternoon? I am here on behalf of four retirees who were in retirement for several years before the city of Joliet imposed the changes that they have described to you, where they unquestionably increased the costs to the plans in terms of their health insurance coverage under the terms of a collective bargaining agreement that was in effect on the date of their retirement. The city was to pay the cost of that coverage. There's no question I don't think that they've ignored that provision and imposed additional costs. They don't dispute that. What we have, as Mr. Kleinman chooses to characterize as a pension clause, I think because it's a self-serving soundbite type of approach to limiting its benefits, I would describe as a benefits protection clause because it's broader than just pension. It talks specifically in terms of protecting the rights that ignore from the membership of a pension or retirement system. And those benefits shall be enforceable as contractual rights. And that's what we filed suit to do, to enforce our contractual rights. The contractual rights that we are trying to enforce are the collective bargaining agreement rights that we retired under. And much of Mr. Kleinman's argument ignores the fact that under Illinois law, as well as recognized by the United States Supreme Court, it's those contract rights that are in effect on the date of retirement that control the benefits for retirees. This new contract that they brought about with the city employees that he says serves some sort of benefit to my retiree, they can't enforce. It wasn't in effect on the date of their retirement. It's only those rights that they have at that time. The rationale behind those opinions is the fact that they are no longer members of the union voting to approve the new contract, no longer voting to approve the decision-making of the leaders or voting for the leaders themselves. The only contract that they have that protects them is the one that's in effect on the date of their retirement, and that is inherent in the retirement system or the pension system of any of the various pension articles contained in the pension code. Well, isn't this really boiled down to what does the concept of benefits in that clause mean? It does. And if you look at all of the various articles of the pension code, like I suggested we do, and he says we didn't cite any legal authority, but you can look at the provisions that pertain to IMRF or to CSRS, as he has referred to, there are benefits other than just pension payments. IMRF, the CSRS, they all talk about annuity types of payments. IMRF has provisions for annuities to surviving widows and surviving children. And it also talks about calculating earnings of the employee that's going to get these benefits based on allowances, which would include the vacation allowance that if he's got unused vacation time or unused sick time, that goes into the compilation of earnings because they give that allowance, and it's supposed to be included in that calculation. So benefits is much more than just the amount of a pension check. And if you look at the integration of the pension code provisions, which, again, I think he mischaracterizes, because when he tells you that there is no indication in the pension code that it pertains to anything besides pensions, Well, when you say pensions, you mean besides money checks, right? Yeah, the monthly compensation check that the pensioner, the retiree, gets. In the two articles that we're talking about here, the fire pension code and the police pension code, those are Articles 3 and 4 of the pension code. And if you look at Sections 5.3-133 and 5.4-125, it authorizes the pension boards of both of those pension systems to pay not only pension, but other benefits. It specifically says other benefits. And then in subsequent sections, it makes the provision, which he says is characterized or is, which he characterizes as just being an administrative shortcut for getting the payments for the health insurance. These are the Sections 5.3-124.2 and 5.4-117.1 that authorize the deduction for the health insurance from the pension check. But it says more than that. If you read the section, you'll see that it makes reference to the insurance code that contemplates. As a matter of fact, it requires now, not under its current amendment, the city of Joliet is required to provide for continuation of benefits into retirement under those sections of the insurance code. And that's 5.3-367F and 5.3-367G of the insurance code that applies to both fire and police. The other thing that he leaves out of that is the same sections, on page 9 of his reply brief, he says, well, those premiums can vary in amount, and it's up to the retiree to pay it. But what he leaves out of that section, as you'll notice with these three dots, is the final clause that says, unless there's a collective bargaining agreement in effect that says who pays the premium. And that's what we have here. We have a collective bargaining agreement all of these plans retired under that said the city shall pay the cost of this coverage. And now they're moving it to them. Judge Pettengerl determined that this was a violation of Article 13, Section 5. She was totally correct. They tried then to say, well, there was no diminishment of the benefits because we provided other things. Well, this new collective bargaining agreement, as I've already pointed out, doesn't apply to them. They can't enforce it. It wasn't in effect on the date of their retirement. If we were to say we want some new, you know, if they would have increased the pension amount in that, and we came to court and said we want that new pension amount, we want that new higher pension, all they have to say is no, that collective bargaining agreement wasn't in effect. Is there no de minimis contribution? I mean, is your position absolute in the sense that any change in the medical insurance from the retirement dates on would be impermissible? When we're talking about the benefit for the retiree, yes, because the language is clear in the collective bargaining agreement that the city shall pay the cost of that coverage. That's what it says. We plan it. It's in the complaint. It's admitted in their answer. No doubt about it. There are different provisions that come into effect when you talk about the dependent coverage, and they tried to make a big issue out of that because of the so-called subsidy that they have given since 1986 for dependent health care premium coverage. What they had been doing for many, many years is basically not charging any of the employees or retirees anything more than, I think the figure was $120, basically, per month. So they kept subsidizing the amount of the cost of the dependent premiums. Now if they came into court with Judge Petrogliaro and said, look, we could have been charging them more all this time, but we haven't, so we should get some credit for that. Well, she rejected that because still, even if you do the math, there's an increased cost here. They were paying the coverage for the dependent health care premium beforehand, and now after this change, they're still paying the same amount, but they also paid the additional cost. Judge Petrogliaro said, they haven't saved anything by this change you've made. All you've done is increased their cost. It was totally correct. That's what the evidence shows. They wanted credit for this premium when all along my argument would have been that since it was the policy of the city for so many years, at the time that they retired, they retired under that benefit. They should be able to enforce it. I'm sure their argument would be no. It was something that had to be part of the contract or had to be specifically provided by statute. But the point being that if it's not something that we can enforce, it's something they can take away any time, this dependent premium, they could turn around tomorrow and impose the entire cost on us and say it wasn't in your contract, it's not in the insurance code, it's nowhere. You can't force that on us. The other aspect to it is, and very importantly, I think as far as Jim Vancea and General Kansas is concerned, they don't have any dependents. That provision about the subsidy for the dependents doesn't apply to them. It's of no benefit whatsoever. So there's no question about that for those two plaintiffs. Definitely only an increase in cost. The city had relied, I think, in great extent on the New York legislation. I would submit to you that there are a number of differences in the New York situation that led to the Lippman decision that you've seen in the briefs that they've argued about that distinguish it. And the Lippman court held that their protection clause didn't apply to health insurance, but the situation that they had there was much factually different. And, in fact, the Lippman opinion notes that their holding is based on the fact that there was no contract expressed or implied that provided for the health insurance benefits that the plaintiffs were seeking to enforce there. All there was in Lippman was a provision in the civil service code that said the employer shall pay a minimum of 50%. There's no reference to it in the pension code at all. Nothing that created any right like we had here were under a collective bargaining agreement that was in effect. So they shall pay the cost of this coverage. If Lippman court had a collective bargaining agreement with that kind of provision in it, I would submit to you that their decision would have been contrary to what was rendered. And along those lines, in arguing that issue, we talked about the Alaska Supreme Court decision, which recognizes that they have argued the fact that the Duncan decision, the second decision of the Alaska Supreme Court, somehow eviscerated that finding because they said that the health care benefits could be assessed on a group basis to determine whether or not there's an offset or a diminishment of the retiree's rights. Here again, we get into this question of diminishment, and I would suggest to you that in terms of trying to evaluate that, it becomes very complicated, but what we see in the facts of this case is that despite these changes that they've made, there has been no savings given to the plaintiffs in this case. That was Judge Petringara's finding. The only savings that they've got were the subsidy that they already had. It wasn't new. That was one of the requirements of the Duncan decision. There had to be some new offset. That wasn't here in this case. The other thing I want to point out to the court in terms of allowing a city to make these kinds of adjustments whenever they want is it gives them the power to basically eviscerate the coverage that benefits the retirees. I made the point, I made mention in the brief, the fact that if you buy their argument, the city could unilaterally decide, okay, we're going to offset the, we're going to take away all the coverage and benefits for Alzheimer's disease and give you better coverage for pregnancy. I'm sure that the younger, active union members would be happy with that, but the retirees would be very much left out in the cold. It's that kind of shifting of coverages that so impairs their rights. And the only thing that they can do under Article 13, Section 5, is seek to enforce their contractual rights, and that's what we're here to do. Thank you. Thank you, Mr. Jarvis. And Mr. Blyman, any rebuttal? Again, this is a constitutional case. This is not a collective bargaining agreement, Mr. Jarvis, essentially that this is an all or nothing matter. Yes. There's no... I don't, well, you asked a question about de minimis, and I think that's always an issue in any case, that there may be action that is not justiciable on a prudential basis because of a de minimis change in the plan. I don't think there's anything that would exclude that. My problem with the plaintiff's position in the circuit court's order is that this is a constitutional case, and the plaintiffs have asked the judicial system of this state to read Article 13.5 in a way that was never intended by the framers, is not consistent with its express language, it's not consistent with the case law that's been decided, and I start with Bedell, but I can point the court to several cases, all the way up to Smithburg, which was a 2000 case, and they all consistently hold that the contract, the provisions of the contract enforceable by 13.5 are pension benefits found within the pension code. Now, there's more to 13.5 than that. They explicitly state that? Yes, and the cases are outlined in my brief. Almost as an introductory comment in setting up the opinion of the court, they said this is what Article 13.5 protects. The contract is the benefits that are in the pension code at the time a member enters the system, and that's been the consistent black-letter holding, or at least statement in all the cases that the Supreme Court has considered, and when you take that statement and then try to reconcile that with the relief sought in this case and the theory of the case here, we're not talking about a pension benefit that, thus, at the time of entry into the system, plaintiffs are asking this court to turn that upside down and say, well, it's any benefit that is in a collective bargaining agreement at the time an employee leaves service. Well, I'm sorry. There may be other legal theories that support that cause of action. They haven't been pled. They're not constitutional. They're beyond the scope of 13.5, and that's the exact comment that the New York Court of Appeals stated in the Litman decision, in the 1985 case, and as I tried to state in my brief, the Illinois Pension Protection Clause is essentially stolen from the New York State Constitution, and several Illinois Supreme Court cases, Felt, which dealt with the judge's pension, Bedell, which dealt with Professor Bedell and his military service credits. In both those cases, there's a comment by the Supreme Court that the New York cases have special significance based on the origin of the Pension Protection Clause, and when the Litman court dealt with this exact issue, is health insurance within the scope of protection of this constitutional provision, the Litman court said no, and they said health insurance is important. Health insurance may be protected by a contract or by a statute, but it's not protected by the Pension Protection Clause. The Constitution only goes so far. It does not cover every potential item of property or benefit that an employee may have, and so the plaintiff could have chose to assert a non-constitutional theory, but the plaintiff didn't, and the circuit court could have directed the pleadings in the case differently, but the circuit court made a constitutional ruling that 13 flat of 5 applies to health insurance when it's expressed language only deals with benefits that spring from membership in a retirement system. Our health insurance plan is not a retirement system. We know that from common sense. We also know that Peter's decision in 1974 found that Springfield's civil service system was not a retirement system. Counselors, one minute. So if Joliet's health insurance plan is not a retirement system or a pension plan, then any benefit which springs from our health insurance plan is not within the scope of protection of 13-5. That only protects benefits which come from pension plans. Your Honor asked a good question about the 13-5 disclaimers. Some pension plans in Illinois have substantive authority to provide health insurance, and whenever the legislature saw fit to do that, they added a provision, I call it a disclaimer, saying, hey, this health insurance authority does not trigger 13-5 rights. There's clear legislative intent that health insurance is beyond 13-5. Now, the plaintiffs in this case are not part of that type of pension plan. They're part of the downstate police and fire, which does not have authority to offer substantive health insurance benefits. They do not. There was no legislative need to insert a 13-5 disclaimer in the downstate police and fire plans because they don't provide health insurance. IMRF can, Chicago pension plans can and do, and the 13-5 disclaimer makes sense there, but not in our case. We're asking that you enforce the Constitution as written. If plaintiff has another claim that lies in another forum because of a different source of authority, that's where it belongs, but it doesn't belong under 13-5. Thank you very much. Thank you, Mr. Kleinman, and thank you both for your arguments today. We will take this matter under consideration and get back to you with a written decision within a short day. We'll now take a short recess.